907 P.2d 72

The STATE of Arizona, ex rel. David A.
GONZALEZ, Warden, Arizona State
Prison–Fort Grant, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF NAVAJO, the Honorable Paul W. Colarich, a judge thereof, Respondent Judge,

Marvin Raye RICHARD, Real
Party In Interest.

No. 1 CA–SA 95–0029.

Court of Appeals of Arizona,
Division 1, Department D.

March 14, 1995.

Review Denied Nov. 21, 1995.

Grant Woods, Atty. Gen. by Mary Jane Gregory, Asst. Atty. Gen., Tim Delaney, Asst. Atty. Gen., Phoenix, for petitioners.

Marvin Raye Richard, Fort Grant, real party in interest in pro. per.

OPINION

CONTRERAS, Judge.

In this Special Action, we consider whether retroactive application of the 1994 amendment to Ariz.Rev.Stat.Ann. ("A.R.S.") section 31–412(C), which prescribes certain voting procedures for granting parole to inmates who are convicted of serious offenses, violates *ex post facto* principles. We hold that application of section 31–412(C) in this case did not violate the *ex post facto* clause of either the state constitution or the federal constitution. We accept jurisdiction and grant relief.

**FACTS AND PROCEDURAL HISTORY**

In 1982, Marvin Raye Richard ("Richard"), the Real Party in Interest, pled guilty to armed robbery. The trial court sentenced Richard to eighteen years in prison, to begin July 25, 1982. The court ordered Richard to serve his sentence concurrently with punishment sought by Texas authorities in a separate case.

The Board of Pardons and Paroles ("Board") consisted of five members in 1982. Ariz.Sess.Laws 1978, ch. 164, § 12 (amended 1984). Additionally, three members constituted a quorum. *Id.; see also* A.R.S. § 1–216(A) (1995). Hence, if a parole hearing panel consisted of either four or five Board members, a majority vote of three was required for the prisoner's release.

By contrast, A.R.S. section 31–412(C), effective July 17, 1994, establishes a seven-member Board. This statute also states that a three-person panel must vote unanimously in favor of granting parole in cases involving serious offenses such as armed robbery. A.R.S. § 31–412(C)(2) (Supp.1994).[1]

On September 27, 1994, a three-person panel designated by the Board conducted Richard's parole hearing. Although two panel members voted to grant parole, one panel member voted to deny. Consequently, the panel denied parole pursuant to the new A.R.S. section 31–412(C)(2).

Richard subsequently filed a Petition for Writ of Habeas Corpus dated October 12, 1994, in which he alleged, among other things, that the voting requirements prescribed by A.R.S. section 31–412(C)(2) violated the *ex post facto* clauses of the state and federal constitutions. The trial court elected to treat the Habeas Corpus Petition as a Special Action Petition and directed the State to file a Response. In a written "Judgment" entered on January 19, 1995, the trial court concluded that A.R.S. section 31–412(C) inflicted a greater punishment than the law in effect at the time that Richard was convicted. The trial court also ruled that the statute applied retroactively to Richard; thus, the Board had improperly denied his parole *ex post facto*. The trial court determined that Richard was entitled to Special Action relief and ordered "the Chairman and the Arizona Board of Executive Clemency [to] grant parole to Petitioner [Richard] forthwith."

On January 27, 1995, the trial court issued an order staying the judgment in order to permit the State to file a Special Action. On February 28, 1995, we considered the Special Action and accepted jurisdiction. We also continued the stay of proceedings until fur-

ther order of this Court, with a written opinion to follow.

## SPECIAL ACTION JURISDICTION

■ The question of whether A.R.S. section 31–412(C)(2) violates the *ex post facto* clause of the State or federal Constitution is one of first impression in this State and presents a pure question of law. The State asserts that this is an issue of state-wide importance, and we agree. In the past three months alone, according to the State's representations, the Board has denied parole to forty-seven inmates after they failed to achieve the unanimous vote required by A.R.S. section 31–412(C)(2). The State also maintains that numerous other inmates will be similarly situated in the future.

We also concur with the State's argument that there is no equally plain, speedy, and adequate remedy by appeal. Moreover, deciding this case will provide guidance for the trial courts. Accordingly, we accept jurisdiction. *See, e.g., Rios v. Symington,* 172 Ariz. 3, 5, 833 P.2d 20, 22 (1992); *Bledsoe v. Goodfarb,* 170 Ariz. 256, 258, 823 P.2d 1264, 1266 (1991).

## DISCUSSION

■ The historical parameters of the *ex post facto* clause were last reviewed by the United States Supreme Court in *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). In *Collins,* the Supreme Court emphasized that the *ex post facto* clause is strictly limited to the following:

"1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime,* or makes it *great-*

---

1. Section 31–412(C) provides as follows:
   C. An inmate who is otherwise eligible for parole and is serving a sentence for a conviction of a serious offense as defined in § 13–604, subsection T, paragraph 2, subdivision (a), (b), (c), (d), (e), (f), (g), (h), (i), (j) or (k) shall not be granted parole or absolute discharge from imprisonment except by one of the following votes:
   1. A majority affirmative vote if four or more members consider the action.

   2. A unanimous affirmative vote if three members consider the action.
   3. A unanimous affirmative vote if two members consider the action pursuant to § 31–401, subsection I, paragraph 2 and the chairman concurs after reviewing the information considered by the two members.
   A.R.S. § 31–412(C) (Supp.1994).

*er* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*"

*Collins*, 497 U.S. at 42, 110 S.Ct. at 2719 (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)).

Consequently, the *Collins* Court rejected the more expansive interpretations of *ex post facto;* a law that materially alters the situation of a party to his disadvantage or deprives a person of a "substantial right involved in his liberty" is not *per se* an *ex post facto* violation. *Id.* at 51, 110 S.Ct. at 2723–24. This includes procedural changes that work to a defendant's disadvantage. *Id.* at 50, 110 S.Ct. at 2723. For example, the *Collins* Court specifically overruled *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), stating that a retroactive change "reducing the size of juries in criminal cases from 12 persons to 8 . . ." would *not* affect the *ex post facto* clause. *Id.* at 51–52, 110 S.Ct. at 2723–24.[2]

The court in *Alston v. Robinson*, 791 F.Supp. 569 (D.Md.1992), followed *Collins* and concluded that a retroactive revision in the percentage of board members' votes, requiring a higher rate of approval for work release or parole eligibility, did not violate the *ex post facto* clause. The court stated that this modification was "very much procedural in nature" and did not "substantially alter" the " 'quantum of punishment.' " *Id.* at 590–91.

In the present case, Richard's punishment was a sentence of eighteen years. Section 31–412(C) is clearly procedural in nature and does not alter the criteria that the Board applies in determining parole eligibility. Thus, the "quantum of punishment" here re-

mains the same, although the unanimous vote requirement may diminish Richard's ability to achieve parole. *See Collins*, 497 U.S. at 42, 110 S.Ct. at 2719.

The legislature's alteration of the number of Board members required to vote in favor of Richard's parole has not newly criminalized his acts, enhanced his punishment, or altered the legal rules of evidence as they apply to his case. Hence, retroactive application of A.R.S. section 31–412(C)(2) to Richard's parole hearing does not violate *ex post facto* constitutional principles. *See Collins*, 497 U.S. at 42, 51–52, 110 S.Ct. at 2723–24; *Alston*, 791 F.Supp. at 590–91.

### CONCLUSION

We accept jurisdiction and grant relief to the State. We thus vacate the trial court's judgment ordering Richard's parole and remand this case with directions to dismiss the Special Action Petition that was filed by Richard in the superior court.

GERBER, P.J., and EHRLICH, J., concur.

---

**2.** In both the trial court and this Court, Richard has relied upon *United States ex rel. Steigler v. Board of Parole*, 501 F.Supp. 1077 (D.Del.1980). The *Steigler* Court held that it was an *ex post facto* violation to retroactively apply a law that increased the number of required affirmative parole board votes from three to four out of five.

*Id.* at 1078, 1080–81. *Steigler*, however, was based upon the United States Supreme Court's decision in *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), which the Supreme Court has since overruled. *Collins*, 497 U.S. at 51–52, 110 S.Ct. at 2723–24.